Carl PASQUALINI, et al., Plaintiffs,

v.

SHEET METAL WORKERS' NA-
TIONAL PENSION FUND,
et al., Defendants.

No. 97 CIV. 8685(LAK).

United States District Court,
S.D. New York.

July 6, 1999.

Michael R. Galina, Gayle A. Rosen, Rabinowitz & Galina, Mineola, NY, for Plaintiffs.

Ron Greenfield, Edmund P. D'Elia, P.C., New York City, for Defendants.

**MEMORANDUM OPINION**

KAPLAN, District Judge.

The plaintiffs in this case are six employees and four principals of Zodiac In-

dustries, Inc. ("Zodiac"), some of whom also were employees at relevant times. The defendants are the Sheet Metal Workers' National Pension Fund (the "Fund"), an ERISA qualified employee benefit plan established in accordance with collective bargaining agreements involving the Sheet Metal Workers' International Association (the "International") and affiliates, the International, and Sheet Metal Workers' Local Union Local 38 ("Local 38"). Plaintiffs here contend that they are entitled to certain prior service credit with respect to the International's plan. Defendants moved for summary judgment dismissing the complaint. The parties subsequently stipulated that the case would be tried on a stipulated record and that the Court would make findings of fact and resolve any disputed factual matters as if the case had been fully tried in open court.[1]

*Facts*

*Background*

Carl Pasqualini, now a principal of Zodiac, started as a member of the union in 1956 and worked in that capacity until 1963 when he withdrew to take a management position, first with P & P Sheet Metal and later with Future Way Sheet Metal, which went out of business in 1974. During his tenure at Future Way, he appears to have been expelled from the union, although nothing turns on this.

Pasqualini formed Zodiac in 1981 with his wife, his brother Frank, and Sarah Lido.[2] He sought a labor contract with Local 38, which declined the request. Zodiac then competed as a non-union contractor and was sufficiently successful that it became a threat to the local. The union

evidently concluded that it had made a serious mistake and began intensive efforts to organize Zodiac.

*The 1992–93 Negotiations*

By late 1992, Zodiac and Local 38 were on the verge of concluding a collective bargaining agreement ("CBA"), but there was one sticking point: Pasqualini insisted on negotiating an owner/member status with the union and a proper pension benefit for himself and his family.[3]

At that time, the Fund permitted owners of non-union contractors who agreed to CBAs to receive owner-member status, thus making them eligible for union pensions, and to receive up to fifteen years of past service credit. This largesse was limited, however, by a requirement that the owner-member earn 54 months of future service credit in order to qualify for the past service credit, a rule that presented a difficulty for Pasqualini in view of the fact that he then would have been eligible for retirement in considerably less than 54 months. In consequence, the union organizer, Ed Peskie, sought a waiver of the 54 month rule for Zodiac.

After internal deliberations, the union presented a proposal to Pasqualini, but it was rejected. By January 1993, however, the Fund advised Peskie that Pasqualini would receive fifteen years of past service credit when Zodiac signed a union agreement provided that the Fund's board were to decide at its March 1993 meeting to grant past service credit to all owner-members,[4] as evidently was anticipated.

*The February 9, 1993 Meeting and the CBA*

Daniel Willie, who was a representative of the Fund and Peskie and other officials

---

1. Tr., Oct. 21, 1998, at 2–3.

2. Lido initially owned all of the stock. In 1984, she transferred equal shares to Carl and Frank Pasqualini. They in turn conveyed all of the stock to Ann and Marybeth Pasqualini in 1985. In 1987, Ann conveyed her 50 percent interest back to Carl. (PTO § III, ¶¶ 6–8) It therefore appears that Carl and Marybeth Pasqualini now each owns a 50 percent interest in Zodiac.

3. *See, e.g.,* Peskie Dep. 47–48 (Pasqualini told union that he would not sign contract unless he, Ann Pasqualini and Sarah Lido each received fifteen years of past service credit); N. Colombo Dep. 29.

4. DX AA, BB.

of the International and Local 38 met with Pasqualini on February 9, 1993 in order to assure Pasqualini that his desire for pensions for the Zodiac principals would be satisfied and to obtain his signature of the CBA. Willie passed out a written summary of the pension plan as it affected Zodiac. The summary stated that the Fund would grant 180 months of past service credit to each of the principals, Carl and Ann Pasqualini and Sarah Lido, and computed their anticipated pensions based on the assumption that each of them would earn 36 months of future service credit during the period July 1,1993 through June 30, 1996.[5] While representatives of the defendants have testified that Willie spoke of giving "up to" fifteen years of prior service credit subject to satisfaction of various conditions,[6] the Court credits Carl Pasqualini's testimony and finds, particularly given Willie's subsequent correspondence[7] and the union's ardent desire to sign Zodiac, that Willie and the union representatives at the meeting made a flat promise that the owner-members would receive fifteen years of past service credit, subject only to their continued employment for three years following the effective date of the CBA. In addition, Pasqualini was promised that each of his employees would receive past service credit equal to the length of his prior employment with Zodiac.[8] Nor was any qualification made, either in writing or verbally, for the requirement of approval by the Fund's board at the March meeting.[9] It should be noted also that Carl Pasqualini, at least, knew that he was not entitled to the fifteen years of past service credit under the terms of the plan; rather, he relied upon the negotiators' representations that the Zodiac personnel would be given that credit irrespective of the terms of the plan as an inducement to sign the CBA.[10]

In reliance upon Willie's presentation, Pasqualini signed the CBA, effective July 1, 1993.[11] Three days later, Willie wrote to Peskie and confirmed that "three owner/members that are currently employed by Zodiac will be filing owner/member applications with the Plan [and that i]t has been agreed by the Plan that these three owner/members will be granted fifteen (15) years of past service provided that they accumulate thirty-six (36) future service credits before they retire."[12] A copy was

5. DX N.

6. *E.g.*, Peskie Dep. 32–34. Peskie's testimony on this point is particularly unreliable. He stated, for example, that Pasqualini was told at the meeting that the amount of past service credit was contingent on how long Zodiac had been in business and that Peskie then knew that Zodiac had been in business for only twelve years. *Id.* Yet Peskie never disputed Willie's letters (DX E–G), written only days after the meeting, which flatly stated that the Zodiac owner-members would receive fifteen years of credit. *See* Peskie Dep. 38–39. Indeed, when pressed hard, Peskie admitted that Pasqualini asked Willie how much credit he would receive and that Willie responded, "Fifteen years." *Id.* 36–37.

7. *See infra,* text accompanying notes 12–13.

8. C. Pasqualini Dep. 61–63.

9. *See, e.g.,* C. Pasqualini Dep. 49 –50 (four owner-members told "unequivocally" that they would get 15 years credit "for putting in—joining the union"; terms of pension plan "never had anything to do with the negotiations. It had to do with what they would allow for a nonunion company to join.")

10. *Id.* 49–50, 60–61.

11. The defendants' papers and some deposition testimony suggest that the CBA was signed later. But the parties stipulated in the Joint Pretrial Order ("PTO") that Zodiac entered into the CBA on or about February 9, 1993. (PTO § III, ¶ 9) A memorandum from Peskie to the union's regional director stated that the CBA was signed on February 9. DX CC. Other witnesses corroborate that account. The Court so finds.

12. DX E.
Peskie testified that the letter reflected the agreement reached at the February 9, 1993 meeting "exactly." Peskie Dep. 80.
It should be noted also that the qualification requiring three years of future service presupposed the implementation of such a requirement that the plan never in fact implemented. Gochnauer Dep. 80–85.

sent to Walter W. Carlough, the Fund Administrator. Willie wrote similar letters to Peskie again on March 1 and March 22, 1993.[13]

On August 5, 1993, Zodiac submitted an owner/member registration statement, on a form provided by the Fund, to Local 38. The statement listed Carl, Ann and Frank Pasqualini and Sarah Lido as owner/members within the meaning of the pension plan.[14]

*The Litigation Concerning Plan Contributions*

Under the terms of the CBA, Zodiac was obliged to make monthly contributions to the Fund in respect of its employees for periods commencing on and after July 1, 1993. Zodiac, however, ran into financial difficulty and failed to make the required contributions. In consequence, the Fund's trustees, *inter alia,* sued Zodiac in December 1994 to recover the overdue payments.[15]

The Fund's lawsuit precipitated settlement negotiations between Pasqualini and the union. On April 27, 1995, Pasqualini asked Peskie to speak to the president of the International on Zodiac's behalf with a view toward compromising the amount claimed. In addition, he sought "reassurance that the past credits accepted are still in force for employees, owmer [*sic*] members / directors."[16] There is no evidence as to any immediate response, but the Fund on August 4, 1995 wrote to Pasqualini, informed him that it did not have the original of the owner/member registration statement that had been submitted in 1993, and requested that he complete a new form.[17]

Pasqualini appears not to have responded immediately to this request, but on August 25, 1995 he wrote to the Fund "to confirm the original agreement," viz. that (1) the four owner/members would receive fifteen years of past service credit, (2) Carl and Ann Pasqualini and Sarah Lido would be fully vested after three years and Frank Pasqualini after five years of continuous post-CBA service, and (3) Zodiac's mechanics would receive past service credit upon verification of their years of employment.[18]

The Fund responded on September 19, 1995. The letter stated in part:

"The first concern raised was in regard to the Owner/Members receiving past service credit. In order to give you a definitive answer, the [Fund] must receive and approve Zodiac['s] . . . application for Owner/Member participation. Our understanding is that the Pension Fund is willing to approve this application, retroactively to July 1, 1993, since that is also the date of Zodiac's original obligation to the Pension Fund. As per the plan rules in 1993, Owner/Members could receive up to a maximum of 15 years past service credit upon verification of prior service with the newly signed company. Based on the representations that you have made to Mr. Rafferty [i.e., that the Fund had agreed that the four owner/members would receive fifteen years of past service credit upon meeting the vesting requirements outlined above], and assuming that Zodiac's application for Owner/Member participation is approved, the maximum 15 years of past service credit seems appropriate. However, this is a decision that

13. DX F, G.

14. DX D.
 The record does not explain the basis for the inclusion of Frank Pasqualini, who had not been mentioned in prior correspondence. As the defendants do not dispute that he is situated similarly to the other plaintiffs, however, nothing turns on this.

15. DX EE.

16. DX HH.

17. DX H.

18. DX B.

the Pension Fund must make after your registration is approved." [19]

Prompted no doubt by the Fund's pointed reminder that its request for a new registration statement had not been fulfilled, Pasqualini submitted the necessary document in November 1995.[20] The Fund promptly advised Pasqualini that it had been approved.[21] The letter was silent as to the issue of past service credit. Soon thereafter, Zodiac settled the Fund's lawsuit against it.[22]

*The Benefit Application and Appeal*

In 1996, Ann Pasqualini applied for pension benefits from the Fund. Her application was rejected. The Fund took the position that she could be entitled to past service credit for no more than the five years during which she had been employed by Zodiac and that she was eligible for credit only for such periods as she had been employed doing work covered by the CBA. It raised an issue also concerning whether the failure to perform covered work during all or part of her years of employment constituted a break in service under the plan.[23]

While not all of the pertinent documents are of record, the four owner-members appealed the decision to the Fund's board.[24] The administrator of the Fund took the position that (1) because Zodiac was not founded until 1981 and the effective date of owner-member status originally reported was November 30, 1984, no more than 8 years and 8 months of past service credit could have been earned, (2) Ms. Lido and Ann Pasqualini were not entitled to any past service credit because they never had done work covered by the CBA, as required by the terms of the plan, and (3) the representations made to Zodiac were not binding on the Fund.[25] In a letter dated July 14, 1997, the Fund rejected the appeal, adopting the administrator's proposed rationale.[26]

It is undisputed that none of the plaintiffs has applied for pension benefits other than Ann Pasqualini and Sarah Lido.[27] The Fund has not acted on the latter application.[28]

*Discussion*

The heart of the case is Ann Pasqualini's claim for pension benefits that she allegedly should have received previously and the claim of all of the plaintiffs for clarification of their rights to future benefits under the plan. These prayers for relief fall squarely within Section 502(a)(1)(B) of ERISA.[29]

It is undisputed that the position taken by the Fund trustees in respect of Ann Pasqualini's application for a pension, which is common also to Sarah Lido, is in accordance with the plan. Past service credit is available only for covered work.[30] Neither of these individuals performed any such work.[31] Moreover, the plan's position with respect to all four owner-members— that none is entitled to past service credit for a period longer than Zodiac had been

19. DX II.

20. DX C.

21. DX JJ.

22. DX K.

23. DX J.

24. *See* DX QQ, RR.

25. DX QQ.

26. DX TT.

27. C. Pasqualini Dep. 61–63; F. Pasqualini Dep. 31.

28. *Id.* 63.

29. 29 U.S.C. § 1132(a)(1)(B).

30. DX P, § 4.02(a).

31. Ann Pasqualini is a housewife who cares for a quadriplegic son and an aged parent. To whatever extent she ever did work for Zodiac, as distinguished from receiving a salary from it, she worked at home on financial matters. C. Pasqualini Dep. 93.; *see also* A. Pasqualini Dep. 5. Sarah Lido did bookkeeping. C. Pasqualini Dep. 64; Lido Dep. 7.

in existence at the relevant date, which was less than fifteen years—also is in accordance with the plan.[32] The fundamental question presented here is whether the Fund is estopped to deny the fifteen years of past service credit that was promised to the Zodiac principals to induce them to have Zodiac sign the CBA.

Section 402(a)(1) of ERISA provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument."[33] The requirement is designed to "ensure[ ] that plans be governed by written documents ... and that [summary plan descriptions], drafted in understandable language, be the primary means of informing participants and beneficiaries."[34] It also protects the solvency of plans by ensuring, as far as possible, that those responsible for their financial well-being can determine the extent of plan obligations from plan documents.[35] Nevertheless, our Court of Appeals has recognized that "under 'extraordinary circumstances' principles of estoppel can apply in ERISA cases."[36] The controlling questions therefore are (1) whether plaintiffs have made out a case of estoppel and, if so, (2) whether the circumstances are sufficiently extraordinary to permit invocation of that estoppel against the plan notwithstanding the strong statutory policies cutting against such a result.

*The Owner–Members*

As the circumstances of the four owner-members and those of the employee plain-tiffs are not identical, it is useful to consider them separately.

The elements of estoppel in this circuit are clear. The plaintiff must show that a promise was made, that the plaintiff relied upon it to the plaintiff's detriment, and that the failure to enforce the promise would be unjust.[37] In this case, it is perfectly plain that these elements are satisfied with respect to the four owner-members. The Fund, in the person of Mr. Willie, flatly promised that they would receive fifteen years of prior service credit if they caused Zodiac to sign the CBA. Zodiac signed in reliance on that promise and thereby obligated itself to make contributions to the Fund in respect of both the owner-members and its employees. The failure to enforce that promise would be unjust, particularly in light of the fact that the Fund and its associated union deliberately made the promise in order to induce precisely the reliance that ensued, thus enabling the union to overcome the last remaining obstacle to signing an important target of its organizing efforts.

The Fund contends that the owner-members' reliance on the promise was unreasonable because Willie was not a trustee, the CBA and the registration statement that Zodiac signed stated that the terms of the plan would apply, and Zodiac did not seek written confirmation of the promise for a lengthy period, among other

---

**32.** DX P, § 4.02(a) ("In general, credit will be given for periods of employment before the Participant's Contribution Date if he was employed *by the Contributing Employer* in work covered by the terms and conditions of a Collective Bargaining Agreement with a Participating Local.") (emphasis added).

**33.** 29 U.S.C. § 1102(a)(1).

**34.** *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988); *Ehrlich v. NYNEX Corp.,* 949 F.Supp. 213, 218 (S.D.N.Y. 1996); *see generally Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995).

**35.** *Chambless v. Masters, Mates & Pilots Pension Plan,* 772 F.2d 1032, 1041 (2d Cir.1985), *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986) (citing *Haeberle v. Board of Trustees of Buffalo Carpenters Health Care Funds,* 624 F.2d 1132, 1139 (2d Cir.1980)).

**36.** *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993) (quoting *Chambless,* 772 F.2d at 1039); *accord, Bonovich v. Knights of Columbus,* 146 F.3d 57, 62–63 (2d Cir.1998); *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 79 (2d Cir.), *cert. denied* 519 U.S. 1008, 117 S.Ct. 511, 136 L.Ed.2d 401 (1996).

**37.** *Bonovich,* 146 F.3d at 62 (citing *Schonholz,* 87 F.3d at 79).

reasons.[38] But the arguments are unpersuasive. The Pasqualinis are working people. They were not represented by counsel in their dealings with the Fund and the union. The belt-and-suspenders measures that are second nature to skilled lawyers are not the stuff of their everyday existence. This Court finds that their reliance on the flat, unequivocal statements of Mr. Willie and the union representatives with whom they dealt was entirely reasonable. To hold otherwise would be to ignore the reality that lay people simply do not approach business transactions as their more educated offspring are taught to approach them at our nation's law schools. In any case, the defendants certainly allowed the Pasqualinis to enter into the 1996 settlement of the unpaid contributions lawsuit without disabusing them of their expectation that they would receive the past service credit for which they bargained in 1993.

The question whether these events come within the "extraordinary circumstances" rubric is somewhat more difficult. While the circuit has articulated the standard, it rarely has had occasion to explain just what separates ordinary from extraordinary estoppels.[39] The only Second Circuit case elaborating on the distinction, *Devlin v. Transportation Communications International Union,*[40] however, demonstrates that the current case is extraordinary. The Second Circuit there discussed the *Schonholz* case at some length, suggesting that "a reader might plausibly infer that we determined [the *Schonholz* ] plaintiff to have adduced ... facts sufficient to support the 'extraordinary circumstances' requirement."[41] The Court wrote that what had been remarkable in *Schonholz* was "the defendants' use of promised severance benefits as an inducement to persuade [the plaintiff] to retire."[42]

This case is indistinguishable in principle. Here, the Fund's promise to credit the owner-members with fifteen years of prior service was intended to play, and played, a pivotal role in allowing the union to organize Zodiac's labor force. It was precisely the sort of inducement the *Devlin* court described. It also subjected the principals of the company at least to the additional expense of the benefit plan contributions in respect of their employees. In these circumstances, it would be extremely unfair to permit the Fund to avoid plaintiffs' estoppel argument. Doing so would deprive the owner-members of the *quid pro quo* for which they bargained in agreeing to the CBA, with its requirement of making benefit plan contributions to the Fund. Moreover, there has been no showing that the enforcement of this promise, which affects only four individuals, would have any effect whatever on the solvency or financial well-being of the plan. In consequence, this Court finds that the circumstances of the owner-members are extraordinary and that the Plan is estopped to deny them the fifteen years of prior service credit that they were promised.

*The Zodiac Employees*

Although the plaintiffs in the pretrial order seek a determination that the other employee plaintiffs are entitled to past service credit as well, the briefs submitted by the parties ignore them entirely. Moreover, none has sought to retire or applied for pension benefits. None was covered by the appeal taken to the Fund's board. The Fund has taken no position with respect to their entitlement to past service credit. Finally, their factual circum-

---

**38.** Def. Br. 22.

**39.** In *Bonovich,* the district court found that the plaintiffs had failed to establish the elements of estoppel. 146 F.3d at 63. *Schonholz* held that there were genuine issues of fact material to whether the elements of estoppel were satisfied. 87 F.3d at 78–80. *Lee* held that the complaint did not allege each of

the elements of estoppel. 991 F.2d at 1009–10.

**40.** 173 F.3d 94 (2d Cir.1999).

**41.** *Id.* at 102.

**42.** *Id.*

stances differ in critical respects from the owner-members. First, there is no suggestion that any is entitled to past service credited dating back farther than Zodiac's existence.[43] Nor is there any reason to suppose that they were not performing work covered by the CBA. In consequence, it appears that the bases upon which the Fund denied Ann Pasqualini's pension application and rejected the joint appeal of the Pasqualinis and Ms. Lido are inapplicable to these plaintiffs.

 Section 502(a)(1)(B) of ERISA authorizes suits to clarify rights under pension plans. Such actions are a species of declaratory judgment suit. But there are two obstacles to the maintenance of the claim of the employee plaintiffs. First, ERISA as a general matter requires exhaustion of remedies provided by the plan,[44] something that has not occurred with respect to these plaintiffs. Second, courts will decline to grant declaratory relief absent a ripe controversy in which the issues have been presented adequately and the remedy would serve a useful purpose.[45] Those conditions are not satisfied here. The Court therefore declines to adjudicate the premature claims of the employee plaintiffs.

### Conclusion

For the foregoing reasons, judgment will enter (1) in favor of plaintiffs Carl, Ann and Frank Pasqualini and Sarah Lido and against the Fund, declaring that each is entitled to fifteen years of past service credit under the Sheet Metal Workers' National Pension Fund, (2) directing the Fund to reconsider and to act upon the pension applications of Ann Pasqualini and Sarah Lido, respectively, (3) dismissing the claims of the remaining plaintiffs against the Fund, and (4) dismissing the claims of all plaintiffs against defendants Sheet Metal Workers' International Association and Sheet Metal Workers' Local Union Local 38.[46]

The foregoing constitute the Court's findings of fact and conclusions of law.

Settle judgment on two (2) business days' notice within fourteen days of the date of this order.

SO ORDERED.

**43.** Deposition testimony of Daniel A. Willie submitted by Sheet Metal Workers' National Pension Fund 73–78 and attached 4/30/93 letter from Ms. Gochnauer to Ms. Ledi.

**44.** *E.g., Kennedy v. Empire Blue Cross & Blue Shield,* 989 F.2d 588, 593 (2d Cir.1993); *Ehrlich,* 949 F.Supp. at 216–17.

**45.** *E.g., Trans Pacific Leasing Corp. v. Aero Micronesia, Inc.,* 26 F.Supp.2d 698, 712

(S.D.N.Y.1998); *Goldberg v. Winston & Morrone,* No. 95 Civ. 9282, 1997 WL 139526, *3 (S.D.N.Y. Mar.26, 1997).

**46.** The fraud claims against them are patently without merit, as plaintiffs have not established that any of the defendants made the promise to them without any intention to perform.