Ann E. **BUBLITZ** and Dorothy A. **Pierce, Individually and on Behalf of Themselves and All Persons Similarly Situated, Plaintiffs,**

v.

**E.I. duPONT de NEMOURS and COMPANY, and PIONEER HI–BRED INTERNATIONAL, INC., Defendants.**

**No. 4–00–CV–90247.**

United States District Court, S.D. Iowa, Central Division.

March 26, 2001.

818

Gerald J. Newbrough, Michael W. Thrall, Frank B. Harty, Nyemaster, Goode, Voigts, West, Hansell & O'Brien, PC, Des Moines, IA, Daniel M. Reilly, Larry S. Pozner, Julie M. Williamson, Hoffman, Reilly, Pozner & Williamson, LLP, Denver, CO, Brent B. Green, Mariclare Thinnes-Culver, Duncan, Green, Brown, Langeness, Des Moines, IA, for Plaintiffs.

Michael A. Giudicessi, William J. Hunnicutt, Faegre & Benson, Des Moines, IA, John B. Gordon, Steven L. Severson, James A. O'Neal, Paul W. Heiring, Ahna M. Thoresen Severts, Faegre & Benson, Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

This is an action brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by Ann Bublitz and Dorothy Pierce, both individually and on behalf of themselves and all those similarly situated. The action is currently before the Court on Defendants' motions to dismiss. In their motions to dismiss, Defendant Pioneer Hi–Bred International, Inc. ("Pioneer") and Defendant E.I. duPont de Nemours and Company ("DuPont") contend that the claims against them are not ripe. DuPont further contends that even if the claims are ripe, it is not a proper party. The Court grants Defendants' motions to dismiss in part and denies them in part. Plaintiffs' Motion for Class Certification is also fully submitted. However, in light of recent circumstances, the Court will not make a decision on it at this time.

## I. BACKGROUND

The benefit plan at issue in this case is called the Change in Control Severance Compensation Plan for Management Employees ("Change in Control Plan"). This plan was created by Pioneer at least in part to protect itself from the adverse effects of attempted takeovers. To that end, the plan provides generous severance benefits in the event of a takeover in order to encourage people to work in an environment where takeover threats were real.

More than just a takeover, or "Change in Control," is necessary to entitle an employee to benefits under the plan though. The employee must be subject to an involuntary termination, which the plan defines

as a termination other than a termination for cause or the participant's resignation or retirement for a "Stated Good Reason." Under Section 2.1(t) of the plan, a "Stated Good Reason" is "a written determination by a participant that he [or she] reasonably and in good faith cannot continue to fulfill the responsibilities for which he [or she] was employed." Plaintiffs refer to this as a "subjective" trigger. The plan also identifies a number of specific actions by Pioneer that give rise to a conclusive presumption that the participant's determination is reasonable and in good faith, which Plaintiffs refer to as "objective" triggers. These objective triggers include the following: (a) a reduction in the participant's base salary; (b) a failure to continue in effect any bonus plan; (c) a failure to continue any benefit or compensation plan; (d) an assignment to the participant of any duties inconsistent with the participant's duties, responsibilities, or status immediately prior to the Change in Control, or changes in the participant's reporting responsibilities, title, or office; and (e) a requirement that the participant change the location of his or her job or office, so that the participant will be based more than 30 miles away from where he or she was based.[1]

Claims for severance benefits must be made in writing to the "Severance Committee" within three years of the Change in Control. An eligible participant is then entitled to receive a lump-sum cash payment equal to three times his or her compensation, plus health, dental, and life insurance coverage for twelve months. In October of 1999, DuPont purchased the remaining 80% of Pioneer that it did not already own and effected a Change in Control within the meaning of the plan.

Plaintiffs filed this action on April 21, 2000 in state court on behalf of themselves and around 250 other upper-level management employees of Pioneer. Defendants removed it here, and the Court found it had jurisdiction because ERISA governed Plaintiffs' claims. Plaintiffs then filed their Recast and Substituted Complaint, alleging four counts: Count I is a claim for enforcement and declaration of plan benefits against Pioneer and DuPont; Count II is a breach of fiduciary duty claim against Pioneer and DuPont; Count III is a claim against DuPont for interference with protected rights; and, Count IV is an equitable relief claim against Pioneer and DuPont asking the Court to toll the three-year period during which participants are entitled to exercise their rights under the plan for the pendency of this action.

On August 8, 2000, Plaintiffs filed their motion for class certification. Ten days later, Defendants filed their motions to dismiss. Then, on August 23, 2000, Defendants requested and were granted an extension of time to respond to Plaintiffs' motion for class certification until such time that Defendants could complete certain discovery. This meant the parties ended up finishing their briefing on the motions to dismiss before they finished briefing the motion for class certification.

Before the parties finished briefing the motion for class certification, but after the parties finished briefing the motions to dismiss, Defendants asked the putative class members to accept or reject what they referred to as a "Retention Proposal." As indicated by its name, the Retention Proposal was designed to provide participants with an incentive to remain at Pioneer. It offered each participant a stock option grant valued at three times the

---

1. In their brief in support of their motion for class certification, Plaintiffs state that any claims involving objective triggers (d) and (e) are not a part of this action. Pls.' Mem. Br. in Supp. of Mot. for Class Certification at 5 n. 4.

employee's total compensation as of October 1, 1999. The options would then become vested on October 1, 2002, if the employee was still employed by Pioneer. In exchange for these stock options, participants had to waive their rights under the Change in Control Plan, accept a new Transitional Severance Plan (which provided benefits in certain circumstances when an employee suffers an involuntary termination before his or her stock options vest wherein the definition of "involuntary termination" is narrower than that in the Change in Control Plan), and agree not to participate in litigation regarding the Change in Control Plan. Although there was some dispute regarding the manner in which Defendants could communicate such an offer, the Court eventually allowed Defendants to present the Retention Proposal directly to the putative class member, but only in writing. Defendants presented the Retention Proposal to the putative class members on September 29, 2000 and gave them until October 18, 2000 to accept it.

At the time of the hearing on the motion for class certification and the motions to dismiss, February 21, 2001, there were 220 people who had signed the Retention Proposal, 33 people who had refused to sign the Retention Proposal, 27 people who had received benefits under the Change in Control Plan, and 1 person who had been denied benefits under the Change in Control Plan. However, the number of people who refused to sign the Retention Proposal but have neither been granted nor denied benefits under the Change in Control Plan appears to be decreasing steadily. In fact, in an affidavit dated February 15, 2001, the Director for Human Resources for Pioneer stated that three of the people who are still considered participants in the Change in Control Plan (people who refused to sign the Retention Proposal but

have neither been granted nor denied benefits) have been notified that they are being terminated effective March 15, 2001 because of a reduction in force.

## II. DISCUSSION

### A. Order of Proceedings

Although the motions to dismiss and the motion for class certification are all fully submitted, the Court will not make a decision on the motion for class certification at this time. In hand-delivered letters dated March 14, 2001 and March 16, 2001, the parties informed the Court that Dorothy Pierce resigned from Pioneer on March 12, 2001 but has not yet applied for benefits. This presents a problem because Ann Bublitz, the other named Plaintiff, has already resigned and received benefits. Plaintiffs have conceded that all those Plaintiffs who have received benefits should not be included in the Class. Pls.' Reply Br. in Supp. of Mot. for Class Certification at 3 n. 2. Though Plaintiffs argue that Ann Bublitz is still entitled to fees and expenses and should thus be a member of the class, they concede that she should not be a class representative. Therefore, if Dorothy Pierce applies for and receives benefits there will not be anyone left to represent the class. Since it is quite possible that this could happen, the Court will wait until Pioneer either grants or denies Ms. Pierce benefits (or until Plaintiffs amend their complaint) before making its decision on class certification.

█ Plaintiffs urge the Court to go ahead and rule on the motions to dismiss anyway.[2] The significance of deciding the motions to dismiss first is that the decision will only have a stare decisis effect on the putative class members, rather than a res judicata effect. The Ninth Circuit has

---

**2.** Letter from Plaintiffs to Court of 3/16/01, at    2.

held that this difference, combined with the mandate of Federal Rules of Civil Procedure 23(c)(1) that a court must rule on class certification "[a]s soon as practicable after the commencement of an action brought as a class action ...," requires a court to get the consent of the defendants in order to decide a dispositive motion prior to class certification. *Wright v. Schock,* 742 F.2d 541, 543–46 (9th Cir. 1984). However, the Court sees no reason why Defendants' consent is necessary in this case. *See Vervaecke v. Chiles, Heider & Co., Inc.,* 578 F.2d 713, 719–20 (8th Cir.1978) (affirming summary judgment where no ruling had been made on class certification and without mention of defendant's consent). The issues the Court will decide on the motions to dismiss are whether certain claims are ripe and whether DuPont is a proper party. The Defendants will suffer no practical harm. This is so because the putative class members the Court dismisses here are unlikely to bring suit in their own right at all, and the claims in which DuPont is dismissed are claims in which DuPont could provide no relief anyway. Further, making a decision on these issues now will greatly assist the Court's decision on class certification later. Therefore, the Court believes the most prudent course of action is to go ahead and rule on the motions to dismiss now even though it has not ruled on class certification.

### B. Motion to Dismiss Standard

In addressing a motion to dismiss under Rule 12(b)(6), this Court "is constrained by a stringent standard .... A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief." *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 545–46 (8th Cir.1997) (quoting *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982) (citation omitted) (emphasis added)). In addition, the complaint must be liberally construed in the light most favorable to the plaintiff and should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *See Parnes,* 122 F.3d at 546. Finally, when considering a motion to dismiss for failure to state a claim, a court must accept the facts alleged in the complaint as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The Supreme Court has articulated the test as follows:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

### C. All Counts Against DuPont

DuPont contends that it is not a proper party to any of the claims launched against it by Plaintiffs. Plaintiffs list DuPont as a Defendant in all four counts of their complaint. The Court agrees with DuPont on Counts I, III, and IV.

■ In Count I, Plaintiffs ask for a declaration and enforcement of benefits. Specifically, they ask the Court to declare the following:

A. Each Class Member's subjective written determination under the Change in Plan that he or she reasonably and in good faith cannot continue to fulfill the responsibilities for which he or she was employed entitles the Class Member to receive Plan benefits.

B. One or more of the objective benefits triggers in sections 2.1(t)(a), 2.1(t)(b) and 2.1(t)(c) of the Change in Control Plan have already occurred (been pulled) for the Class as a whole, so each Class Member's written determination under the Plan that he or she cannot continue to fulfill the responsibilities for which he or she was employed is conclusively presumed to be reasonable and in good faith.

C. Stated Good Reason already exists for each Class member under the Change in Control Plan, or will exist at his or her sole discretion.

D. The manner in which the defendants currently view and treat the Class Members' rights and benefits under their bonus plans and other compensation and benefit plans, particularly the Change in Control Plan, is itself a Stated Good Reason under the Plan.

E. The defendants are breaching the Change in Control Plan by requiring Class Members to resign in order to receive a determination of their respective rights to receive Plan benefits.

F. In determining the Class Members' respective rights to receive Plan benefits, the Pioneer–DuPont merger can be considered as having occurred at least by the time the Merger Agreement was signed, or, if not then, at least by early May, 1999.

Recast and Substituted Complaint at 51. In *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196 (8th Cir.1998), the court essentially held that any claim to enforce or clarify one's rights under ERISA can only be brought against the plan and the present plan administrator. In this case the plan is clear: Pioneer is the present plan administrator. Plaintiffs do not dispute this fact. Instead, Plaintiffs contend that DuPont is a proper party because it actually controls the plan and the Severance Committee. Nonetheless, if the Court is to effect the relief requested in this count it will be against Pioneer and not DuPont. Therefore, Count I against DuPont must be dismissed.

■ In Count II, Plaintiffs allege a breach of fiduciary. ERISA provides the following definition of a fiduciary:

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S. § 1002(21)(A). In their initial brief, DuPont contends that it was not a fiduciary at the time Plaintiffs allege it failed to furnish summary plan descriptions. However, in their resistance brief, Plaintiffs point out that they allege DuPont violated its fiduciary duties in other respects as well, such as putting into effect a "quit-first" requirement before receiving a determination on their benefits and other actions restricting access to benefits. DuPont recoils at these allegations. There is clearly a factual dispute here, which cannot be resolved on motion to dismiss.

■ DuPont also contends that Plaintiffs' breach of fiduciary claim against it

must be dismissed because it is a repackaged claim for benefits. In *Wald v. Southwestern Bell Corporation Customcare Medical Plan,* 83 F.3d 1002, 1006 (8th Cir.1996), the court held that a count must be dismissed if in it the plaintiff seeks no different relief than that sought in his or her count under 29 U.S.C. § 1132(a)(1)(B). And in *Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 140–44, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Court held that relief sought for a breach of fiduciary claim under 29 U.S.C. § 1109 must inure to the benefit of the plan as a whole. At the hearing on this matter, Plaintiffs stated that they are seeking the imposition of a Rabbi Trust, the imposition of a constructive trust, and a determination that DuPont committee members are not proper fiduciaries for the plan. This requested relief satisfies the requirements of *Wald* and *Russell.* Therefore, the Court will not dismiss Count II against DuPont at this time.

■ In Count III, Plaintiffs allege DuPont intentionally and improperly interfered with the attainment of their rights and benefits under the plan in violation of 29 U.S.C. § 1140. In relevant part, § 1140 makes it unlawful for "any person to ... interefer[e] with the attainment of any right to which such participant may become entitled under the plan, [or] this subchapter." *See Adams v. LTV Steel Min. Co.,* 936 F.2d 368, 370 (8th Cir.1991), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 968, 117 L.Ed.2d 134 (1992) (setting forth the prima facie case for an interference claim). Unlike Count II, this count is a repackaged claim for benefits. Plaintiffs do not request any relief in Count III that they do not request in Counts I or II. Count III must therefore be dismissed under *Wald* because it is redundant. *See Wald,* 83 F.3d at 1006.

Finally, in Count IV, Plaintiffs seek equitable relief in connection with Count I. Plaintiffs ask that the Court toll the three-year period during which Plaintiffs are entitled to exercise their rights under the plan so that it does not expire before this case is resolved. Since the Court is dismissing Count I against DuPont, Count IV serves no purpose as against DuPont and must also be dismissed.

### D. Counts I and II Against Pioneer and DuPont

In their briefs on the motions to dismiss, Defendants only argued that Plaintiffs' claim for a declaration and enforcement of benefits is not ripe. However, at the hearing on this matter, Defendants stated that they also believed that Plaintiffs' breach of fiduciary claim was not ripe. The Court will address the ripeness issue as to both claims.

The thrust of Defendants' argument is that Plaintiffs' claims are not ripe until they quit, make a request for benefits, have their request denied, appeal the denial, and then have the appeal denied. Until this is done, Defendants argue, the harm Plaintiffs' complain of is "wholly contingent" and their claims must therefore be dismissed. *See W.R. Grace & Co.—Conn v. United States Environmental Protection Agency,* 959 F.2d 360, 366 (1st Cir. 1992) (holding that the ripeness doctrine is unconcerned with "such wholly contingent harm" as was presented in that case). Plaintiffs contend that neither ERISA nor the Declaratory Judgment Act requires a participant of a plan to quit before receiving a clarification of his or her rights. More importantly, they claim that Defendants' quit-first policy is contrary to the intent and purpose of the plan and a departure from prior practice.

Under Count I, the Court is left with the question of whether Plaintiffs may sue to

have their rights to severance benefits under the plan clarified and enforced before quitting their jobs. ERISA does allow participants and beneficiaries to bring declaratory judgment actions to clarify or enforce their rights:

A civil action may be brought—

(1) by a participant or beneficiary—

\* \* \* \* \* \*

■■ (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C. § 1132(a)(1)(B). The Court cannot, however, exercise authority over a claim that is not ripe. *See Ohio Forestry Association, Inc. v. Sierra Club,* 523 U.S. 726, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998). Determining whether a claim is ripe means determining whether the underlying dispute has matured to a point that warrants decision. *Automotive, Petroleum & Allied Industries Employees Union, Local 618 v. Gelco Corp.,* 758 F.2d 1272, 1275 (8th Cir.1985). For example, a claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States,* 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (internal quotations omitted). The factors relevant to a ripeness determination are (1) the fitness of the issue for judicial resolution and (2) the hardship to the parties of withholding court consideration. *Automotive, Petroleum & Allied Industries Employees Union, Local 618,* 758 F.2d at 1275.

■■ The ability to clarify or enforce one's rights must provide some type of relief that is different than simply seeking to recover benefits. *See* 29 U.S.C. 1132(A)(1)(b). According to the Fifth Circuit, ERISA is congruent with the Declaratory Judgment Act, and thus ERISA allows a person who is uncertain of his rights to prevent avoidable damages by obtaining an early adjudication of his rights without waiting until his adversary takes injurious action against him. *See Heimann v. National Elevator Industry Pension Fund,* 187 F.3d 493, 510–11 (5th Cir.1999). Thus, it would seem that ERISA plaintiffs should be able to have their rights clarified before they actually experience any harm.

The question then becomes whether the harm Plaintiffs complain of is contingent enough to make their claim unripe. Plaintiffs claim that the harm they would suffer is having to quit their jobs without knowing whether they would receive benefits; and they complain that claims under the subjective and objective benefits triggers at issue in this action will certainly be denied. Plaintiffs also complain that, either under some fiduciary duty or under the plan itself, they are entitled to a pre-quit determination. If this is the case, and for the purposes of a motion to dismiss the Court must accept that it is, then the harm Plaintiffs complain of may not be contingent at all.

■■ The Retention Proposal is also very significant in this inquiry. Many of the putative class members signed the Retention Proposal, thereby waiving their rights to the Change in Control Plan and indicating their desire to remain employed at Pioneer. By doing this, the Court thinks they have demonstrated that their claims are not ripe. In fact, because Plaintiffs admitted at the hearing that they are not challenging the validity of those waivers, their claims might have gone from not being ripe to being moot. On the other hand, some of the putative class members rejected the quite lucrative Retention Proposal. The Court believes that by doing this, those putative class mem-

bers have further demonstrated the ripeness of their claims. Then, of course, there are those who have already quit. This group is divided into two groups: those who received benefits and those who were denied benefits.[3] Plaintiffs have conceded that those who have received benefits should not be in the class. But the claims of those who were actually denied benefits are ripe. Therefore, all those who either signed the Retention Proposal or received benefits must be dismissed from Counts I and IV.

The New York district court's holding in *Pasqualini v. Sheet Metal Workers' National Pension Fund*, 54 F.Supp.2d 357 (S.D.N.Y.1999), does not dictate a different result. In that case, the court held that there are two requirements a plaintiff must meet before bringing a claim to clarify his or her rights. *Id.* at 364. First, the plaintiff must exhaust any remedies provided by the plan. *Id.* Second, the controversy must be ripe in the sense that the issues are presented adequately and the remedy would serve a useful purpose. *Id.* The Court has already explained why it thinks some of the claims here are ripe. And as for the exhaustion of administrative remedies, the Eighth Circuit has distinguished itself from the Second Circuit in that it only requires exhaustion of administrative remedies in ERISA cases when it is required by the particular plan involved. *See Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir.1994) (contrasting the same case, *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 594 (2nd Cir. 1993) ("exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy"), that *Pasqualini*, 54 F.Supp.2d at 364 n. 44, cites in support of its exhaustion language).

The same putative class members must be dismissed from Count II as are dismissed from Count I. Under *Russell*, any relief sought for a breach of fiduciary claim must inure to the benefit of the plan. *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134, 140–44, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Persons who have either signed the Retention Proposal or have been granted benefits have no interest in such relief. In fact, since no challenge is being made to the validity of the waiver, the claims of these putative class members are probably moot now as well not being ripe.

## III. CONCLUSION

Defendants' motions to dismiss (Clerk's Nos. 50, 51) are **GRANTED IN PART AND DENIED IN PART**. Counts I, III, and IV against DuPont are dismissed. And Counts I, II, and IV brought by persons who signed the Retention Proposal and persons who received benefits under the Change in Control Plan are dismissed. That leaves Count I against Pioneer, Count II against both Pioneer and DuPont, and Count IV against Pioneer—all brought by those who have refused to sign the Retention Proposal or have been denied benefits.

**IT IS SO ORDERED.**

---

**3.** The Court does not address at this time the claims of those like Ann Bublitz who have received benefits but still contend they are entitled to fees and expenses.